## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv- _____

OKEMOS HOME, LLC, a Wyoming limited liability company, individually and as a member of LGF Produce, LLC

       Plaintiff,

v.

LGF PRODUCE, LLC, a Colorado limited liability company;
NEW MEXICO GREENHOUSE HOLDINGS II, LLC, a Colorado limited liability company;
CFH MANAGEMENT, LLC, a Colorado limited liability company;
MARK W. WONG, an individual;
SCOTT H. PEARCE, an individual;
NATHAN E. DRAKE, an individual; and
GARY M. JACOBS, an individual.

       Defendants.

_____

## VERIFIED COMPLAINT
_____

Okemos Home, LLC ("Plaintiff" or "Okemos"), individually and as a member of LGF Produce, LLC ("LGF"), by and through its attorneys, submits this Verified Complaint as follows:

## PARTIES

1.      Okemos is a single member limited liability company, with its principal place of business at 909 Mapleton Ave., Boulder, CO 80304. Okemos has been a member of LGF since September 13, 2016.

2.      LGF is a Colorado limited liability company, with its principal place of business at 2595 Canyon Boulevard, Suite 420, Boulder, CO 80302.

3.    New Mexico Greenhouse Holdings II, LLC ("NMGH"), is a Colorado limited liability company, with its principal place of business at 2595 Canyon Boulevard, Suite 420, Boulder, CO 80302.  NMGH is a member of LGF.

4.    CFH Management, LLC ("CFH Management"), is a Colorado limited liability company, with a principal place of business at 2595 Canyon Boulevard, Suite 420, Boulder, CO 80302.  CFH Management is the manager of and NMGH.

5.    Mark W. Wong ("Wong") is an individual who resides at 1001 Mapleton Avenue, Boulder, CO 80304.  Wong is a member of LGF individually and through an IRA trust custodian.  He has been represented to be LGF's Chairman and shares "day-to-day responsibility for supervision of the Company and the execution of its business plan …" with co-defendant and LGF CEO Scott Pearce.  Wong also controls CFH Management as a managing member of that entity.  Wong also controls NMGH, through his control of CFH Management.

6.    Scott H. Pearce ("Pearce") is an individual who resides at 315 16th Street, Boulder, CO 80302.  Pearce is the CEO of LGF.  He is a member of LGF individually and through an IRA trust custodian.  Based on documentation provided to Okemos in August 2016, Pearce is a managing member of CFH Management.  Pearce controls LGF through his role with LGF and through CFH Management, as a managing member of that entity.  Pearce has also been represented to control NMGH, as a managing member of that entity.

7.    Nathan E. Drake ("Drake") is an individual who resides at 2241 Dahlia Street, Denver, CO 80207.  Drake is a member of LGF through a third-party entity, Prototerra, LLC. Drake is represented to be LGF's "CFO and general counsel," a role he also holds for other entities such as NMGH and CFH Management.  Drake controls CFH Management as its managing director.  Likewise, Drake controls LGF, through his role with LGF and through CFH

2

Management, as its managing director.  Similarly, Drake controls NMGH, through CFH

Management, as its managing director.

8.      Gary M. Jacobs ("Jacobs") is an individual who resides at 525 Highland Avenue,

Boulder, CO 80302.  Jacobs is a member of LGF.  Jacobs controls CFH Management as a

managing member.  Similarly, he controls LGF and NMGH through his control of CFH

Management.

9.      By information and belief, Wong, Pearce, Drake, and Jacobs all have an interest

in, and control of LGF, NMGH and CFH Management, as individuals or through their closely

held entities.

10.      Wong, Pearce, Drake, and Jacobs may be referred to collectively herein as the

"CFH Partners".

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331, because the claims alleged herein relate to violations of the Securities Act of 1933 and the

Securities and Exchange Act of 1934, as amended.

12.      Further, this Court has supplemental subject matter jurisdiction over Plaintiff's

state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the claims arising

under the Securities Act of 1933 and the Securities Exchange Act of 1934 as to form part of the

same case or controversy under Article III of the U.S. Constitution.

13.      All of the Defendants are residents of, or have their principal place of business in,

Colorado, they have transacted business in Colorado, the actions and events giving rise to this

action occurred in Colorado, including the omissions and misrepresentations, solicitation of

Okemos' investment in LGF, and execution of the Second Amended and Restated Operating

Agreement of LGF ("Operating Agreement") occurred in Colorado.  Exhibit A (a true and correct copy of the Operating Agreement).

14.     Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391 as a substantial part of the actions and events giving rise to this action occurred in this district, including the omissions and misrepresentations, solicitation of Okemos' investment in LGF, and the execution of the Operating Agreement.  The Operating Agreement also provides that any action related to it may be brought in federal court, which court is located in Denver, Colorado.

15.     This Verified Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack.

## INTRODUCTION

16.     This action is being brought as a result of the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, omissions, and other misconduct by the Defendants, performed in connection with the solicitation and sale of securities related to LGF, which resulted in Okemos being defrauded out of nearly $1 million.  The CFH Partners utilized their control over LGF and other entities as an opportunity to devise and implement a scheme that defrauded Okemos, in furtherance of the CFH Partners' motive of enriching themselves and their closely held entities.

## GENERAL ALLEGATIONS

### The Defendants Solicit Okemos' Investment in LGF

17.     In an e-mail of August 15, 2016, Wong approached Okemos' owner, Roger Koenig ("Koenig"), regarding an investment offering in LGF.

18.     Attached to Wong's e-mail was an "offering memo for our produce company." This document was labeled "ProduceCo Investment Overview – Final" and titled "LGF Produce,

LLC Business and Investment Overview, August 1, 2016" ("Business and Investment Overview").

19.     Among other things, the Business and Investment Overview made the following relevant representations:

a.      "LGF Produce, LLC ("Locally Grown Fresh," "Locally Fresh" or the "Company") is seeking investments totaling up to $2,000,000 in its Series A Preferred Membership interests (the "Equity Offering") as described in this document, the associated Term Sheet and Exhibits."

b.      "Locally Fresh currently grows premium kosher and organic produce in two leased greenhouses totaling approximately 16 acres under glass in the Las Cruces, New Mexico area."

c.      "The Company is currently owned by the principals of Colorado Financial Holdings ("CFH"): Mark Wong, Gary Jacobs, Nathan Drake and Scott Pearce (the "CFH Partners")."

d.      "The CFH Partners have committed to fund the Company with $1,200,000 in equity, which represents over one-third (1/3) of the funding the Company is forecast to require."

e.      "The Company is currently also seeking a revolving line of credit up to $2,000,000 from regional banks (the "Line of Credit"), which may be supported by personal guaranties provided by the CFH Partners."

f.      "These funds, together with the amounts raised in this Equity Offering, will be used for capital expenditures, operating expenses and working capital sufficient to bring the Company to full profitability in early 2017."

g.      "In September 2015, a CFH affiliate, New Mexico Greenhouse Holdings II, LLC ("NMGH") acquired a 19-acre greenhouse (of which 14.5 acres are under glass) located in Las Cruces, NM (the "Las Cruces Greenhouse")."

h.      "On March 1, 2016, CFH partnered with Matt Stong ("Stong"), a well-respected local grower, to establish Locally Fresh."

i.      "At the time, Stong was growing produce in a two and a half acre greenhouse (of which 2.0 acres are under glass) located in Deming, NM (the "Deming Greenhouse") owned by Preferred Produce, LLC, a Stong affiliate ("Preferred Produce")."

j.      "The Las Cruces and Deming Greenhouses, the "Greenhouses" are both poly roof, controlled environment facilities using the latest technology to support the Company's proprietary kosher and organic growing methods."

5

k.  "Locally Fresh has entered into long-term leases with NMGH and Preferred Produce at favorable lease rates for 100% of the Greenhouses' acreage, with rent payments commencing in January 2017 or earlier as CFH and Stong may mutually agree."

l.  "The Greenhouses are well located for the Company's distributed business model and have all of the required inputs, infrastructure and governmental approvals, including water rights."

m.  "Currently the Company is in the process of integrating the Deming Greenhouse into the Company's operations and is wrapping up a market research study which will quantitatively assess consumer preferences and buying patterns from fresh, local, and organic produce. Both the integration and marketing work are expected to be complete in September in time for the Company to market and sell its organic produce to Whole Foods under a new brand this fall."

n.  "A summary of the Company's projected financial statements for 2016-2018 for New Mexico operations is attached as Exhibit D. Highlights include:

   ▪  All Las Cruces Greenhouse acres in use by 2016 year-end

   ▪  Cash flow break-even by 2016 year end

   ▪  Revenue and EBITDA stabilizing at $9,400,000 and $2,000,000 run-rates respectively by January 31, 2017"

o.  "Total capital requirements to achieve profitability are approximately $3,200,000, all of which the Company expects to be funded in 2016. Of that amount, $1,200,000 has been funded to date by the CFH Partners. The Company expects the balance to be funded from draws on the proposed Line of Credit and proceeds of this Equity Offering."

p.  "The Company expects operations to reach long-term equilibrium in early 2017, at which point the Company forecasts operating at a $9,400,000 revenue, $2,000,000 EBITDA run rate."

q.  "The Company's capital structure will consist of the following:

   ▪  A bank Line of Credit of up to $2,000,000 used to fund capital expenditures and working capital requirements

   ▪  1.65 million Series A Preferred units issued to the CFH Partners in exchange for their cash equity contributions to date"

r.  "The Company expects to grow to a $2,000,000 EBITDA run rate within the next eight months. These expectations are based on a successful trial, positive responses from actual and potential customers and the deep experience of the CFH Partners and Stong in the Company's line of business. The proceeds of this Equity Offering, together with the substantial equity commitment of the CFH

6

Partners have made to the business and the proceeds of the Line of Credit, will fund this growth."

    s.    A picture of a greenhouse was included on page 2 of the Business and Investment Overview, which was represented to be the greenhouse that LGF would lease and operate.

Exhibit B (true and correct copy of the Business and Investment Overview).

20.    LGF, CFH Management, and the CFH Partners contributed to, authored, authorized, and had ultimate control over the Business and Investment Overview and, as such, they are responsible for the representations contained therein.  That is, the statements were made on behalf of LGF, which is managed by CFH Management, through the control of the CFH Partners.  Further, Wong e-mailed the document to Okemos and he is represented to be LGF's Chairman, Pearce is represented to be LGF's CEO, and Drake is represented to be LGF's general counsel and CFO.  In addition, the Business and Investment Overview contains the biographies of all four CFH Partners as LGF's "Team Biographies" and the document states that "Potential investors interested in learning more about the opportunity to invest in the Company's offering should contact:" Wong, Drake, or Pearce (and it includes each of their contact information).  Additionally, all of the CFH Partners control LGF through their roles with LGF and through CFH Management, which also controls LGF as its manager.

21.    On August 18, 2016, during a subsequent phone call, Wong stated to Koenig that the current LGF valuation of $4.5 million was expected to increase to between $25 and $50 million in 2017.

22.    On August 19, 2016, Pearce sent Koenig, via e-mail, an LGF capital table, LGF operating agreement, and LGF market research.  On August 27, 2016, Pearce sent Koenig, via e-mail, an LGF subscription agreement.  These documents were all sent as part of LGF's and the CFH Partners' solicitation of Okemos' investment in LGF.

7

23.     On August 30, 2016, Pearce and Koenig met in person to discuss the information Pearce had sent Koenig on August 19 and 27 and to further discuss the possibility of Okemos investing in LGF.

24.     At that meeting, Pearce discussed the favorable customer and competitive position of LGF and the investment table showing $1.2 million in purported capital contributions from "CFH & Affiliates," plus $2.0 million from "Third Parties."

25.     Pearce also provided Koenig with an 8x11 photo of the purported LGF greenhouse facilities (the same picture that appears in the Business and Investment Overview).

26.     Between August 23 and September 13, 2016, Koenig and Drake exchanged a number of e-mails negotiating the terms of Okemos' investment in LGF.

27.     On September 13, 2016, based on, and in reliance of, LGF's and the CFH Partners' prior representations, including those set forth above, Okemos executed an Agreement to Purchase Limited Liability Company Membership Interest ("Purchase Agreement").  Exhibit C (a true and correct copy of the Purchase Agreement).

28.     The Purchase Agreement permitted Okemos to purchase 808,407.44 Class A Units of LGF, at a per unit price of $.9896, for a total price of $800,000 ("Equity Investment").

29.     Okemos purchased the Class A Units described above.

**The Defendants Seek a Second Round of Funding for LGF**

30.     On December 29, 2016, Wong sent Koenig an e-mail titled "Convertible (Bridge) Term Sheet & Background Materials."   In this e-mail, Wong stated that LGF is "currently growing organic produce on ten (10) acres of the fifteen (15) total available acres between our two New Mexico Greenhouse Facilities.  The facilities are located in Deming and Las Cruces, New Mexico, which are about 60 miles apart."   Wong further stated that the Deming

8

Greenhouse "has operated smoothly and is successfully producing our expanded product line, including lettuce and cantaloupes, in addition to the tomatoes historically grown and sold to the four New Mexico Whole Foods stores."

31.     Wong also stated in the email that "a series of production related challenges" prevented LGF from meeting Whole Foods' regional demand. "As a result of the challenges and delays we have a need for bridge financing."

32.     Bridge funding was sought from all current investors in LGF, in amount proportional to their current equity investments in the company.

33.     Wong attached a "LGF Convertible Note Term Sheet" ("Note Term Sheet") to the e-mail.  The Note Term Sheet states that "The Notes and the Loan will be senior debt of the Company, secured by all of the Company's tangible and intangible assets."

34.     On December 29, 2016, Koenig responded to Wong via e-mail and requested to speak with him regarding Wong's confidence level in LGF's future success and potential sources of institutional funding.

35.     In response, on a phone call on December 29, 2016, Wong explained that LGF had experienced some operational difficulties with growing leafy vegetables due to a "fungus" and, as a result, additional short term funding was necessary to satisfy demand from Whole Foods.

36.     On December 30, 2016, Pearce sent Koenig a LGF "Financial Projections" e-mail, which stated, among other things, "The core of this plan is focused on growing and delivering to Whole Foods leafy green and tomato products that we have confidence in based on our recent experiences.  This is the basis of the weekly sales projection."  "The resulting cash deficit is $259K with break-even realized at the end of February [2017]."

CORE/3503820.0002/135945898.1

37.     No cash flow for building repairs or other similar liabilities were shown in Pearce's "Financial Projections". LGF weekly revenues were projected to grow steadily from $29,189 in the first week of January to $72,509 in the last week of March.

38.     Pearce's detailed quarterly cash projection for LGF showed the company's total cash deficit as $36,632 at the beginning of January 2017, and subsequently stabilizing at the end of February 2017, at $259,497, less than half of the $600,000 in funds being solicited from investors in bridge notes.

39.     Although the email and subsequent statements were made by Wong, LGF, CFH Management, and the CFH Partners all either contributed to, authored, authorized, and they had ultimate control over the content. This is, they all exert control and authorization over communications on behalf of LGF given their roles with the company and their control over CFH Management, as LGF's manager.

40.     On January 9, 2017, Drake emailed Koenig and represented that all "other investors have funded," meaning that all other LGF investors had purportedly already executed their respective loan documents and provided those funds to LGF.

41.     On January 9, 2017, LGF executed a Senior Secured Convertible Promissory Note in favor of Okemos, in return for Okemos extending LGF $160,000, that could be converted later to equity in LGF in Okemos' discretion ("Bridge Loan"). Exhibit D (a true and correct copy of the Senior Secured Convertible Promissory Note).

42.     On January 20, 2017, Okemos wired the $160,000 to LGF.

## The Defendants Seek a Third Round of Funding for LGF

43.     On March 17, 2017, LGF manager Nathan Drake sent a letter to LGF investors, including Okemos, seeking yet another round of bridge financing, in the amount of $250,000.

The letter was electronically signed by Wong, Pearce, Drake and Jacobs.  The letter stated in part, "We do not believe that we will be able to continue production and business operations after June 2017 unless the Company obtains a commitment for at least $2 million of institutional capital . . . ."

44.     Drake attached a document to the investor bridge financing offering titled "LGF Pitch Final."  The document states that, between June and September 2016, $1.1 million was invested in "two key areas of greenhouse improvements." This investment was detailed with a list of greenhouse infrastructure for heating, cooling, irrigation and roofing materials for the buildings.  The LGF balance sheet shows $7,073,264 in Net Building Value for calendar year 2017.  Series A financing for LGF was stated as $3,250,000 for 2016.

45.     Okemos declined to participate in the March bridge financing.

**Okemos Meets with Defendants Regarding LGF's Performance**

46.     In late March 2017, because LGF and the CFH Partners had burned through over $960,000 of Okemos' investment funds in only 6 months (not to mention other investor funds), Koenig requested a meeting with LGF and the CFH Partners to discuss the company's dire circumstances.

47.     Koenig and Drake agreed to a meeting at the Las Cruces Greenhouse on April 3, 2017, to review greenhouse facility needs with the grower, Stong.  During that meeting, Koenig discovered that the Las Cruces Greenhouse was acquired by NMGH as an abandoned ornamental plant greenhouse, and was largely unsuitable and not equipped for growing organic vegetables, despite the CFH Partners' earlier representations that the greenhouse had all "the latest technology to support the Company's proprietary Kosher and organic growing methods." Paragraph 19.j.

11

48.     During an April 7, 2017 meeting between Koenig and the CFH Partners, Drake drew an organizational diagram and explained that Stong's Preferred Produce is a separately owned and operated company from LGF.  LGF did not lease Stong's Preferred Produce greenhouse facilities in Deming, New Mexico, despite earlier representations to the contrary regarding leasing and operational integration.  Paragraph 19.j-m.

49.     As a result of the April 2017 greenhouse tour and subsequent meeting with the CFH Partners, Koenig learned for the first time that LGF, the CFH Partners, and its grower, Stong, knew of serious issues and inadequacies with the Las Cruces Greenhouse facilities during the Fall and Winter growing seasons of 2016, before LGF sought the Bridge Loan from LGF.

50.     Specifically, in December 2016, after LGF was unsuccessful in growing leafy organic vegetables in the quantity and size that LGF originally planned, LGF hired de Bruin Greenhouse Consulting, LLC as a consultant to inspect the greenhouse and issue a report on its findings ("Consultant Report").

51.     The Consultant Report concluded, among other things, that the consultant could not provide "recommendations for upgrading [the] facility to be able to grow leafy greens cost effectively[,]" because "fundamentals don't exist in this greenhouse to make it suitable for growing leafy greens at normally expected yields.  My recommendation is to start developing a new greenhouse at this location to grow the proper quality lettuce with the proper cost price so you can compete now and in the future."

52.     The Consultant Report also found numerous infrastructure problems, including with the irrigation system, tables, roof, walls, ventilation, energy curtain, and cooling pads.  It also found that production was "very low" compared to what should be expected and if LGF

wished to improve production it needed "to start over and design a proper greenhouse facility for your location to grow year-round organic and Kosher lettuce."

53.     The Consultant Report demonstrates that LGF's and CFH Partners' earlier representations regarding the greenhouse's suitability for growing organic and Kosher lettuce was not true or at the very least misleading, including their representations that the greenhouse was equipped with the "latest technology" used "to support the Company's proprietary Kosher and organic growing methods," and has "all the required inputs [and] infrastructure."  *See* Paragraph 19.j-l.

54.     By information and belief, LGF and the CFH Partners knew those earlier statements were false, or were at least reckless or negligent regarding their truth, prior to seeking the Equity Investment and certainly prior to seeking the Bridge Loan funding from Okemos. That allegation is based on at least the following facts: (a) LGF and the CFH Partners knew that the Las Cruces Greenhouse was originally used for ornamentals, not leafy organic produce; (b) they knew there was a production issue and yields were poor; (c) they represented the yield issues related only to "fungus;" (d) they made those representations despite engaging the consultant during the same time period (and when they were seeking the bridge loans) to review *all* of the growing operations at the greenhouse (not just related to fungus); and (e) they engaged the consultant without disclosing that to investors, while they were seeking bridge loans.

55.     The deficiencies with the Las Cruces Greenhouse and the fact that LGF and the CFH Partners had engaged a professional consultant to review the deficiencies with the greenhouse were material and would have been important to a reasonable investor, such as Okemos, in deciding whether to make the Bridge Loan.  That information materially affected and altered the risk profile of the investment.

13

56.     LGF and the CFH Partners failed to disclose the material deficiencies with the Las Cruces Greenhouse to Okemos prior to soliciting and obtaining the Equity Investment and the Bridge Loan from Okemos.  They had a duty to disclose that information, especially in light of their earlier representations regarding the fitness of the greenhouse for growing organic vegetables and that the "production challenges" related to fungus.

57.     Moreover, Okemos learned that the greenhouse pictures included in the LGF Business and Investment Overview, and later provided by Pearce to Okemos, were of the Deming, not Las Cruces, greenhouse, despite the Defendants implying that the picture represented the greenhouse that LGF would operate.  LGF and the CFH Partners knew that picture was not of the primary greenhouse that LGF operated.  They were at least negligent or reckless in presenting the photo as representing the greenhouse that LGF operated.  That misrepresentation or omission was material, in part, because it was a picture of a greenhouse that was different than the one LGF actually operated.

58.     Further, by information and belief, there was never a formal relationship or "long-term lease" with LGF for its use of the Deming Greenhouse, as represented by LGF and the CFH Partners, nor was the Deming Greenhouse ever fully "integrated" into the LGF operations as being truly part of the LGF investment (paragraph 19.k and 19.m).  That is based on statements and an ownership diagram made by Drake on April 7, 2017, and the LGF Quick Books ledger records not showing lease payments for the Deming Greenhouse, or supporting revenues coming into LGF from the sale of produce at the greenhouse.

59.     As a result of, and in reliance on, those misrepresentations and omissions, Okemos invested in LGF, but otherwise would not have done so if it had known the truth about which greenhouse were operated by and integrated into LGF.   Koenig discovered in April 2017

14

that LGF did not and would not have a formal "long-term lease" agreement concerning the

Deming Greenhouse, and would not "integrate" that greenhouse into the LGF investment.  Those

misrepresentations and omissions were material and caused Okemos' loss because, in part, they

affected and changed the risk profile of the LGF investment.

**LGF and NMGH Lease Agreement**

60.     As a result of meetings in April 2017, Okemos was provided with a copy of a

lease agreement between LGF and NMGH ("Lease Agreement"), related to the Las Cruces

Greenhouse, as well as partial electronic Quick Books ledger records for LGF.

61.     The Lease Agreement between LGF and NMGH provides, in part, that

> Landlord covenants that, on or before December 31, 2016, Landlord shall ensure
> that the Property and all Greenhouse Systems (as hereinafter defined) are
> delivered to Tenant in Good Condition.  The Parties agree that such delivery of
> the Property and all Greenhouse Systems is a condition precedent to the first
> payment of Rent pursuant to this Lease.  For purposes of this Agreement,
> "Greenhouse Systems" means the roof covering, natural gas lines, heating and
> cooling systems, wells and pumps, internal and external water delivery and
> irrigation systems, back-up generators, major electrical systems, Dutch table
> system, and potting systems and equipment.  Thereafter, throughout the Term of
> the Lease, the cost of all maintenance, repair and replacement of the Property and
> all Greenhouse Systems shall be solely Tenant's responsibility.

Exhibit E, Sec. 5.3 (a true and correct copy of the Lease Agreement).

62.     The Lease Agreement states that "Good Condition" "means with respect to

Property, taken as a whole, and each Greenhouse System (as defined below), that it is generally

in good working order, with no known material deficiency, ordinary wear and tear excepted."

Sec. 1.1.

63.     Pursuant to the terms of the Lease Agreement, LGF was not required to begin

paying rent until NMGH complied with its obligations to provide a greenhouse in "Good

Condition."

64.     A review of LGF's books and records revealed that LGF spent hundreds of thousands of dollars of investor funds, including Okemos', on improvements and other building and operational-related expenses for the Las Cruces Greenhouse.

65.     Those expenditures were NMGH's responsibility under the terms of the Lease Agreement.

66.     In order to hide those expenditures from investors and make LGF's books look better than they were, the CFH Partners booked many of those expenses as "R&D" despite the fact that LGF did not have a research and development program.  Indeed, during a June 23, 2017 "CPA meeting," Drake admitted that he had altered the LGF accounting records to move expenses under "R&D" in order to make LGF's 2016 financials look better to prospective investors.  These 2016 financial statements were provided to LGF investors via an email from Wong on June 14, 2017, and no supplemental or updated financials were provided, despite Drake's admission of manipulating the accounting.  During the meeting, Drake refused to subsequently provide the books and records of NMGH to Okemos, stating that he "will have to think about it."

67.     Pursuant to the terms of the Lease Agreement, NMGH retained the benefit of all of LGF's alterations, improvements, and building-related expenditures for the Las Cruces Greenhouse.

68.     NMGH has not reimbursed LGF for the capital expenses incurred.

69.     Moreover, LGF began making rent payments to NMGH, despite the fact that NMGH had not yet fulfilled its obligation to provide a greenhouse in "Good Condition," which was a condition precedent to LGF's rent obligation.

70.     It also made rent payments to NMGH despite LGF receiving the Consultant Report, described above, which detailed the significant deficiencies and inadequacies with the Las Cruces Greenhouse and its systems.

71.     Compounding the problem was the fact that NMGH used much of the faulty greenhouse equipment as collateral to secure a loan NMGH used to purchase the greenhouse.  As such, the faulty greenhouse equipment could not be removed and replaced with suitable equipment due to NMGH's loan obligations.

72.     On or about June 13, 2017, NMGH improperly terminated the Lease Agreement with LGF, thus retaining the benefit of LGF's substantial improvements.

73.     By information and belief, the CFH Partners devised the above scheme with NMGH to use LGF investor funds to improve the Las Cruces Greenhouse and then retain the benefits to the detriment of LGF and its investors.  Had Okemos known that the greenhouse was not suitable for serving LGF's business model of growing organic vegetables, that it would require substantial changes and alterations, and that NMGH would then terminate the lease without permitting LGF to benefit from those improvements, Okemos would not have invested in LGF.

**LGF's Books and Records Show Gross Mismanagement and Misrepresentations**

74.     LGF's books and records reveal the gross mismanagement of LGF's funds and assets perpetrated by LGF, the CFH Partners, and the CFH Partners' entities.

*Commingling and Improper Transfers*

75.     The records show substantial commingling and improper transactions between LGF and NMGH, including transfers between the two companies and the companies paying for the other's expenses.  The commingling was not only improper, but it also resulted in LGF

paying a substantial amount of NMGH's liabilities, which have not been repaid.  The CFH

Partners essentially treated the two companies as one, making NMGH LGF's alter ego.

76.    The records also show excessive and unnecessary spending by LGF, at the hands

of the CFH Partners, including hundreds of thousands in building repairs and maintenance and

over $13,000 spent on travel for CEO Pearce and tens of thousands more spent for unidentified

travelers.

77.    The records also show that, as of the date of Okemos' Equity Investment, LGF

had only $129,598 in its account, despite the CFH Partners' representations prior to Okemos'

Equity Investment that those partners had funded LGF with $1,200,000 in cash.

78.    The records also reveal that on September 28, 2016, just two weeks after LGF's

Equity Investment, LGF made a series of transfers to the CFH Partners for repayment of

purported, but previously undisclosed, notes payable: Drake ($15,867), Pearce ($39,659.80), and

Jacobs ($47,585.80).

79.    Two days later, on September 28, 2016, LGF transferred $47,598.50 to Wong,

also purportedly for repayment of a previously undisclosed note payable.

80.    LGF and CFH Partners failed to disclose any purported debt owed by LGF to the

CFH Partners and that those loans would be paid back out of investors' funds, prior to Okemos

making its Equity Investment.

81.    LGF and the CFH Partners had a duty to disclose that fact to Okemos, given their

prior representations regarding LGF's accounts payable and balance sheets that did not include

amounts owed to the CFH Partners as liabilities.  Further supporting an obligation to disclose is

the earlier representations concerning LGF's need for at least $3,200,000 in "total capital

requirements" to obtain profitability, of which $1,200,000 was to be funded by the CFH Partners,

and the remaining was to come from equity investors, like Okemos.  However, the amount of

capital that ultimately remained in LGF, and thus was needed for "total capital requirements,"

was altered by CFH Partners (i) not making their required capital contributions (as described

below) and (ii) paying themselves back out of investor funds.

82.     The purported loans owed by LGF to CFH Partners were material facts that

should have been disclosed to Okemos prior to Okemos making its Equity Investment.  The

omissions were material and caused Okemos' loss because, in part, they affected and changed

the risk profile of the investment in LGF.

83.     The books and records also do not show significant crop revenue from either the

Las Cruces Greenhouse or the Deming Greenhouse, despite the fact that both greenhouses

produced crops in 2016, per the CFH Partners' representations. By information and belief, the

CFH Partners diverted those funds out of LGF for their own benefit.

### $1,200,000 Equity Investment by CFH Partners Not Made

84.     The books and records do not show $1,200,000 cash equity investments in LGF

by the CFH Partners, despite the Business and Investment Overview stating that "$1,200,000 has

been funded to date by the CFH Partners" (paragraph 19.o.) and that the CFH Partners were

being issued their Series A interest in LGF in exchange for those "cash equity contributions"

(paragraph 19.q.), and similar capital and financial tables sent by Pearce to Okemos in late

August 2016, making similar representations (paragraph 24).

85.     The CFH Partners knew those representations were false, or at the very least

misleading, because they knew that they had not contributed the $1,200,000 in cash when those

representation were made to Okemos prior to its Equity Investment.  In fact, the LGF Quick

Books ledgers clearly demonstrate that certain CFH Partners had not contributed the equity when those representations were made.

86.     The LGF ledgers show that as of the date of Okemos' Equity Investment (more than a month after receiving the Business and Investment Overview containing the misrepresentations), the CFH Partners had only contributed approximately $700,000 in cash into LGF, which represents only approximately 58% of the total $1,200,000 that they represented they had *already* contributed.

87.     Making matters worse, the CFH Partners were credited with capital contributions in LGF that were not in the form of cash, which were then credited to offset the liability accounts for NMGH, and other companies that the CFH Partners own, on LGF's books.

88.     These 2016 QuickBooks ledger entries for these transactions between LGF to the CFH Partners do not appear on the LGF Balance Sheet as of December 31, 2016, which balance sheet was provided by Wong to LGF investors on June 14, 2017, along with the investor K1 statement calculations.  The LGF 2016 Balance Sheet states that each of the CFH Partners, and their company NMGH, made their full equity contributions during 2016. However, the LGF QuickBooks ledgers do not show such equity contributions and are otherwise in significant disagreement with the 2016 Balance Sheet issued by the CFH Partners.

89.     LGF's and the CFH Partners' actions make the statements in the Business and Investment Overview and later conversations with Wong and Pearce regarding the purported $1,200,000 "cash equity" contribution misleading at the very least, for which neither LGF nor the CFH Partners took proper action to clarify or remedy.  The total equity contributed was far short of what the CFH Partners had represented.

20

90.     The representations regarding the purported $1,200,000 "cash equity"
contribution was material to Okemos' decision to invest in LGF.  Indeed, the materiality of that
representation is evidenced by the fact that the Business and Investment Overview even
recognized that the CFH Partners' $1,200,000 "cash equity" investment would equate to
approximately "one-third (1/3) of the funding the Company is forecast to require" to be a viable
operating company (paragraph 19.d.).

91.     Okemos relied on those material representations in making its investments.  The
lack of the CFH Partners' "cash equity" and credit for non-cash equity contributions materially
altered the risk profile of the LGF investment and caused Okemos' loss.

            *NMGH Fails to Make Capital Contribution*

92.     Similarly, the capital table attached to the Operating Agreement, which Okemos
was provided prior to its Equity Investment, represents that NMGH made a capital contribution
of $250,000 to LGF.

93.     During a May 4, 2017 meeting between Koenig and the CFH Partners, Drake
stated that the $250,000 NMGH equity contribution was from a converted Local Economic
Development Act ("LEDA") grant issued by the State of New Mexico.  This grant occurred in
2015, prior to the formation of LGF and was documented "to go toward NMGH's repair,
refurbishment, renovation, expansion, improvement, and/or construction as part of the purchase
of a greenhouse and distribution facility at 4884 S Main Street."  The LEDA grant is secured, for
the benefit of the State of New Mexico, by a second mortgage on the greenhouse property
belonging to the landlord, NMGH.   The grant funds are non-transferable to LGF under their
terms.  LGF Quick Books ledgers also show that no such transfer occurred.  As such, NMGH
never contributed the $250,000 in funds to LGF, nor did corresponding asset values appear on

21

LGF's 2016 balance sheet.  Consequently, NMGH effectively contributed nothing to LGF in order to obtain it's approximately 10% class A position in LGF.

94.     Moreover, as described above, pursuant to the Lease Agreement, NMGH was required to provide a greenhouse in "Good Condition."  Despite that, LGF spent hundreds of thousands of dollars on capital improvements on the Las Cruces Greenhouse and its systems that were NMGH's responsibility, under the Lease Agreement, and which ultimately benefited NMGH and its owners, the CFH Partners.

95.     Drake's May 4, 2017 claim that NMGH's capital contribution was in the form of the LEDA grant, rather than cash or some other actual contribution, was material and should have been disclosed to Okemos prior to its Equity Investment in September 2016.  It was material, in large part, because of LGF's and the CFH Partners' prior representations regarding the amount of capital LGF was going to need to be successful and the fact that they represented that the CFH Partners' equity would be (and was) in the form of cash (and NMGH was already responsible for providing a greenhouse in "Good Condition").  Obtaining equity for non-cash contributions materially affects not only the actual cash available to LGF, but substantially altered the risk profile of the investment, causing Okemos' loss.  The falsification of LGF's capital accounts by the CFH Partners resulted in the depletion of LGF investor assets by at least $250,000.  The LEDA grant assets never appeared on LGF's balance sheet and were retained by the landlord, NMGH.

*Line of Credit Not Obtained*

96.     The books and records also do not show that the CFH Partners ever obtained a $2,000,000 Line of Credit for LGF's benefit.  That, despite the fact that the Business and Investment Overview represented that LGF was "currently" seeking that line of credit and it was

22

a necessary component of LGF's capital for the company "to achieve profitability." Paragraph 19.e. and 19.o.

97.     By information and belief, the CFH Partners and, thus, LGF knew that representation was false, or at the very least were negligent or reckless, at the time it was made. That belief is supported by the fact that (1) the CFH Partners made other misstatements as part of a broader scheme to defraud investors for their benefit; and (2) Okemos has requested multiple times from LGF and the CFH Partners documentation evidencing any attempts to obtain that line of a credit, but no third-party documentation has ever been provided.

98.     The representations regarding the purported $2,000,000 Line of Credit were material to Okemos' decision to invest in LGF and Okemos relied on that representation. That materiality is reflected in that Business and Investment Overview's recognition that the line of credit was important to LGF's ability to "achieve profitability." The absence of the $2,000,000 Line of Credit materially affected and changed the risk profile of the investment in LGF, and caused Okemos' loss.

### *"Profits" Paid to Stong*

99.     The LGF books and records show that LGF paid Stong in excess of $371,000. Of that amount, at least $60,000 was paid for purported "profit sharing" despite the fact that LGF did not turn a profit during that time and no distributions were made to LGF investors.

100.     Okemos raised the issues described herein with LGF, CFH Management, and the CFH Partners, via email and during an in person meetings in April and June 2017, and again in a series of letters in October and November 2017, but those issues have not been resolved. Okemos has also requested updated books and records and other LGF company documents, and NMGH books and records, but the defendants have not provided them. Rather, the Defendants

continue to stall.  Given the structure of LGF and that most of the defendants control LGF and CFH Management, further efforts to resolve these issues would be futile.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Violation of Section 12(a)(2) of the Securities Act of 1933, 15 U.S.C § 77l)**
**(Direct Claim Against LGF, CFH Management, Wong, Pearce, Drake, and Jacobs)**

101.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

102.    Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs were "sellers," "offerors," and/or "solicitors" of securities, in connection with such offerings, as contemplated by the Securities Act of 1933.

103.    The offering documents for the offerings were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and omitted to state material facts required to be stated therein. The false and misleading statements include those contained in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97.

104.    Okemos purchased or otherwise acquired securities offered, solicited, or offered pursuant to or traceable to the misleading offering documents.

105.    By reasons of the conduct herein alleged, Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs violated, and/or controlled a person who violated, Section 12 of the Securities Act of 1933.

106.    Okemos hereby elects to rescind and tender, to those Defendants named in this claim, those securities that Okemos owns, in return for the consideration paid for those securities together with interest thereon.

107.    At the time Okemos purchased LGF securities, it was without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered

those facts prior to April 3, 2017.  Less than one year has elapsed from the time Okemos

discovered or reasonably would have discovered the facts upon which this Complaint is based to

the time Okemos filed this pleading.  Less than three years has elapsed between the time the

securities upon which this Claim is brought and were offered to Okemos and the time Okemos

filed this Complaint.

### SECOND CLAIM FOR RELIEF
**(Violation of Section 15 of the Securities Act of 1933, 15 U.S.C. §77o)**
**(Direct Claim Against CFH Management, Wong, Pearce, Drake, and Jacobs)**

108.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

109.    Defendants CFH Management, Wong, Pearce, Drake, and Jacobs (the

"Controlling Defendants") were each a control person of LGF by virtue of their positions and

roles with LGF and with companies that control LGF, as detailed further above.

110.    Each of the Controlling Defendants was a culpable participate in the violation of

Section 12 of the Securities Act of 1933 alleged in the First Claim for Relief above, specifically

as set forth in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97.

111.    As a result, the Controlling Defendants are liable for the wrongful conduct and

damages sustained to Okemos as a result.

### THIRD CLAIM FOR RELIEF
**(Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5)**
**(Direct Claim Against LGF, CFH Management, Wong, Pearce, Drake, and Jacobs)**

112.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

113.    Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j(b),

makes it unlawful for any person "to use or employ, in connection with the purchase or sale of

any security, . . . any manipulative or deceptive device or contrivance in contravention of such

rules and regulations as the [SEC] may prescribe."  Rule 10b-5, enacted by the SEC under 15

U.S.C. § 78j(b), makes it unlawful for any person, in connection with the purchase or sale of any security:

> [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

17 C.F.R. § 240.10b-5.

114. Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs, knowingly made untrue or misleading statements of material fact, or failed to state a material fact necessary to make their statements not misleading, as set forth with particularity in the foregoing paragraphs, including those in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97.

115. LGF, CFH Management, Wong, Pearce, Drake and Jacobs in connection with the purchase or sale of securities, by the use of the means of instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

116. In deciding to invest in LGF, Okemos reasonably and justifiably relied on the statements and representations made by LGF, CFH Management, Wong, Pearce, Drake, and Jacobs, and on their omission of and failure to state other undisclosed facts, as the defendants intended Okemos to do.

117. LGF, CFH Management, Wong, Pearce, Drake, and Jacobs acted with scienter by acting recklessly or with the intent to defraud Okemos by their statements and conduct as set forth herein.

26

CORE/3503820.0002/135945898.1

118.     Okemos has suffered damages in the amount of at least $960,000 as a result of its reliance on LGF's, CFH Management's, Wong's, Pearce's, Drake's, and Jacobs' false and misleading statements.  Indeed, those misrepresentations induced Okemos to make the investments that it would not have otherwise made, in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in LGF.

**FOURTH CLAIM FOR RELIEF**
**(Violations of Section 20(a) of the 1934 Act)**
**(Direct Claim Against CFH Management, Wong, Pearce, Drake, and Jacobs)**

119.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

120.     The Controlling Defendants acted as controlling persons of LGF within the meaning of § 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78t(a).

121.     As a direct and proximate result of the wrongful conduct of LGF, CFH Management, Wong, Pearce, Drake, and Jacobs, as set forth in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97 above, of which the Controlling Defendants are controlling persons or entities, Okemos suffered damages.

122.     By reason of such wrongful conduct, the Controlling Defendants are liable pursuant to § 20(a) of the 1934 Act.

**FIFTH CLAIM FOR RELIEF**
**(Securities Fraud – Colorado Securities Act)**
**(Direct Claim Against LGF, CFH Management, Wong, Pearce, Drake, and Jacobs)**

123.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

124.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs are liable to Okemos pursuant C.R.S. § 11-51-604(3) and (4), for soliciting and selling securities to Okemos in violation of C.R.S. § 11-51-501(1)(a), (b), and (c).

125.     In connection with the offer, sale and/or purchase of securities, Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs individually and on behalf of LGF, directly

and indirectly: (1) employed devices, schemes and/or artifices to defraud; (2) made untrue statements of material fact and/or omitted to state material facts necessary in order to make their statements, in light of the circumstances under which they were made, not misleading; and/or (3) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Okemos.

126.     In making the false and misleading statements and omissions to Okemos, including those set forth in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97 above, Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs acted with intent to defraud or with reckless disregard for Okemos' interests.  At the time Okemos purchased securities from LGF, it did not know, and in the exercise of reasonable care could not have known, that the representations made to it were materially false and misleading; and did not know the true facts which are alleged in this Complaint to have been omitted.

127.     Okemos has suffered damages in the amount of at least $960,000 as a result of its reliance on LGF's, CFH Management's, Wong's, Pearce's, Drake's, and Jacobs' false and misleading statements.  Indeed, those misrepresentations induced Okemos to make the investments that it would not have otherwise made, in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in LGF.

128.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs are liable to Okemos for such legal and equitable relief that the Court deems appropriate, including rescission, actual damages, interest at the statutory rate, costs and reasonable attorneys' fees, as provided under C.R.S. § 11-51-604(3).

129.     Okemos stands ready to tender its securities.  Okemos is entitled to recover the consideration it paid for the securities, together with interest at the statutory rate, and costs and attorneys' fees, upon the tender of the security, as provided in C.R.S. § 51-604(4).

## SIXTH CLAIM FOR RELIEF
### (Control Person Liability – Colorado Securities Act)
### (Direct Claim Against CFH Management, Wong, Pearce, Drake, and Jacobs)

130.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

131.     LGF, in connection with CFH Management, Wong, Pearce, Drake, and Jacobs engaged in the primary violations of the Colorado Securities Act.

132.     The Controlling Defendants, by virtue of their positions, and/or specific acts described above, were, at the time of the wrongs alleged herein, including those set forth in paragraph 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97 above, controlling persons or entities of LGF, within the meaning of C.R.S. § 11-51-604(5).

133.     By reason of the conduct alleged herein, the Control Defendants are liable, jointly and severally, and to the same extent as LGF and the other primary violators for the wrongful conduct, and are liable to Okemos for the damages it suffered in connection with its purchase of securities.

134.     Okemos stands ready to tender its securities.  Okemos is entitled to recover the consideration it paid for the securities, together with interest at the statutory rate, and costs and reasonable attorneys' fees, upon the tender of the security, as provided in C.R.S. § 11-51-604(4).

## SEVENTH CLAIM FOR RELIEF
### (Aiding and Abetting Liability – Colorado Securities Act)
### (Direct Claim Against CFH Management, Wong, Pearce, Drake, and Jacobs)

135.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

136.     LGF, in connection with CFH Management, Wong, Pearce, Drake, and Jacobs, engaged in primary violations of the Colorado Securities Act.

137.     Defendants CFH Management, Wong, Pearce, Drake, and Jacobs, at all relevant times, had knowledge of the primary violations by LGF, CFH Management, Wong, Pearce, Drake, and Jacobs.

138.     Defendants CFH Management, Wong, Pearce, Drake, and Jacobs provided substantial assistance to the primary violators in achieving the primary violation, including those described in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97 above.

139.     By reason of the conduct alleged herein and pursuant to C.R.S. §11-51-604(5), Defendants CFH Management, Wong, Pearce, Drake, and Jacobs, jointly and severally, and to the same extent as LGF, CFH Management, Wong, Pearce, Drake, and Jacobs, as the primary violators, for the wrongful conduct, and are liable to Okemos for the damages it suffered in connection with its purchase of securities.

140.     Okemos stands ready to tender its securities.  Okemos is entitled to recover the consideration it paid for the securities, together with interest at the statutory rate, and costs and reasonable attorneys' fees, upon tender of the security, as provided in C.R.S. § 11-51-604(4).

## EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)
### (Direct Claim Against LGF, CFH Management, Wong, Pearce, Drake, and Jacobs)

141.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

142.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs gave false and misleading information and/or omitted material information to Okemos, as described more specifically in paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97.

143.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs provided that information to Okemos in the course of a business transaction in which LGF, CFH Management, Wong, Pearce, Drake, and Jacobs had a financial interest.

CORE/3503820.0002/135945898.1

144.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs provided the information to Okemos for its use in a business transaction.

145.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs provided the information or otherwise omitted material information with the intent that Okemos would invest in their business transaction in reliance upon information that they provided.

146.     Okemos' reliance on the information provided by LGF, CFH Management, Wong, Pearce, Drake, and Jacobs caused damage to Okemos.  Okemos has suffered damages in the amount of at least $960,000 as a result of its reliance on LGF's, CFH Management's, Wong's, Pearce's, Drake's, and Jacobs' false and misleading statements.  Indeed, those misrepresentations induced Okemos to make the investments that it would not have otherwise made, in part, because the misrepresentations and omissions materially altered and/or concealed the true risks of investing in LGF.

## NINTH CLAIM FOR RELIEF
### (Common Law Fraud)
### (Direct Claim Against LGF, CFH Management, Wong, Pearce, Drake, and Jacobs)

147.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

148.     Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs made or caused to be made false representations of material facts and/or failed to disclose material facts to Okemos, as set out with particularity in the foregoing paragraphs, including paragraphs 19, 24-25, 30-31, 35-38, 44, 47-58, 77-80, 84, 92-93, 95-97 above.

149.     At the time of the representations and/or omissions, Defendants LGF, CFH Management, Wong, Pearce, Drake, and Jacobs knew that the representations were false or was aware that Okemos did not know whether the representations were true or false.

31

150.     LGF, CFH Management, Wong, Pearce, Drake, and Jacobs made the

representations with the intent that Okemos would rely on the representations and/or omissions,

and in fact Okemos did rely on the representations and/or omissions in investing in LGF.

151.     Okemos' reliance was reasonable and justified.

152.     Okemos' reliance on Defendants LGF's, CFH Management's, Wong's, Drake's,

and Jacobs' false statements and omissions of material facts caused it damages.  Okemos has

suffered damages in the amount of at least $960,000 as a result of its reliance on LGF's, CFH

Management's, Wong's, Pearce's, Drake's, and Jacobs' false and misleading statements.

Indeed, those misrepresentations induced Okemos to make the investments that it would not have

otherwise made, in part, because the misrepresentations and omissions materially altered and/or

concealed the true risks of investing in LGF.

### TENTH CLAIM FOR RELIEF
#### (Breach of Operating Agreement)
#### (Direct Claim Against CFH Management)

153.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

154.     The Operating Agreement is a valid, binding, and enforceable agreement.

155.     Pursuant to the Operating Agreement, CFH Management was appointed as

manager of LGF.

156.     CFH Management accepted its appointment as Manager.

157.     The Operating Agreement, among other things, governs CFH Management's

conduct, as manager of LGF, and sets forth various duties and obligations.

158.     Among other things, the Operating Agreement requires CFH Management, as the

manager of LGF, to

keep proper and complete records and books of account in which shall be entered
fully and accurately all transactions and other matters relating to the Company's

business in accordance with usual and customary accounting principles consistently applied from fiscal year to fiscal year of the Company. The Company's books and records account shall be kept in accordance with the method of accounting elected by the Manager. The books and records shall at all times be maintained at the principal office of the Company and shall be open to inspection and examination by the Members of their duly authorized representatives during reasonable business hours.

159.    The Operating Agreement further provides that CFH Management, as manager of LGF, had the authority "to incur and pay all costs, expenses and expenditures, including payments and reimbursements to affiliates of the Manager in accordance with this Agreement, incurred in good faith in the course of the conduct of the Company business[.]"

160.    CFH Management, as a manager of LGF, has breached the provisions of the Operating Agreement, including those provisions set forth above, in numerous ways, including:

a.    failing to keep proper and complete records and books of account in which all transactions were fully and accurately entered;

b.    failing to keep complete records and books of account in accordance with usual and customary accounting principles consistently applied from fiscal year to fiscal year;

c.    failing to provide Okemos, upon request by Okemos' representative(s), full access to inspect and examine LGF's books and records, including, but not limited to, records concerning LGF's fixed asset schedules to support various depreciation expenses shown on LGF's books, documents evidencing CFH Partners' efforts to obtain the $2 million Line of Credit, documents supporting transactions between LGF and NMGH, documents evidencing/supporting CFH Partners' and their entities' equity contributions in LGF, and NMGH's books and records;

d.    incurring and paying costs, expenses, and expenditures that were inconsistent with the Operating Agreement and not incurred in good faith in the course of the conduct of LGF's business.

33

161.    CFH Management's actions were grossly negligent, reckless, knowing, and/or intentional, not done in good faith, and were not in the best interest of LGF and its investors.

162.    CFH Management's breaches of the Operating Agreement have caused damages to Okemos in an amount to be proved at trial.

163.    Okemos was a member of LGF at the time of the transactions complained of above and was a party to the Operating Agreement.

**ELEVENTH CLAIM FOR RELIEF**
**(Breach of Lease Agreement)**
**(Derivative Claim Against NMGH)**

164.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

165.    Pursuant to C.R.S. § 7-80-713, Okemos has standing to bring a derivative action on behalf of LGF to enforce LGF's rights where, as here, LGF is not otherwise acting to enforce those rights. Okemos raised the issues described herein multiple times with CFH Management, but CFH Management failed to remedy the issues.  Okemos was a member of LGF at all relevant times.

166.    The Lease Agreement is a valid, binding, and enforceable agreement between LGF and NMGH.

167.    The Lease Agreement, among other things, required NMGH to provide to LGF a greenhouse and "Greenhouse Systems" that were in "Good Condition," as defined and described within the Lease Agreement, on or before December 31, 2016.

168.    The Lease Agreement's term was from December 31, 2016, to December 31, 2027 ("Lease Term").

169.    NMGH's obligation to provide a greenhouse and "Greenhouse Systems" in "Good Condition" to LGF was a condition precedent to LGF's obligation to pay rent.

170.    In addition, NMGH represented and warranted in the Lease Agreement that

Neither the execution and delivery hereof, nor the fulfillment of or compliance
with the terms and conditions hereof, nor the consummation of the transactions
contemplated hereby conflicts with or results in a breach of the terms, conditions,
or provisions of any restriction, agreement or instrument to which the Landlord is
now a party or by which the Landlord is bound, or constitutes a default under any
of the foregoing.

171.    NMGH breached its contractual obligations in the Lease Agreement, including

those set forth above, by at least (1) failing to provide LGF with a greenhouse and "Greenhouse

Systems" that were in "Good Condition" on or before December 31, 2016; (2) NMGH obtaining

a mortgage that was secured by the real property and various greenhouse equipment within the

Las Cruces Greenhouse, which prevented NMGH from removing or altering said equipment and,

in turn, interfered with LGF's ability to obtain a greenhouse and "Greenhouse Systems" that

were in "Good Condition" and suitable for LGF's intended use and purpose; and (3) improperly

terminating the Lease Agreement before the expiration of the Lease Term and retaining the

benefit of LGF's lease payments and building maintenance and capital expenditures.

172.    As a result of NMGH's breach of the Lease Agreement, LGF suffered damages in

an amount to be proved at trial.

173.    Okemos was a member of LGF at the time of the transactions complained of

above.

### TWELFTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Derivative Claim Against NMGH)

174.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

175.    Pursuant to C.R.S. § 7-80-713, Okemos has standing to bring a derivative action

on behalf of LGF to enforce LGF's rights where, as here, LGF is not otherwise acting to enforce

those rights. Okemos raised the issues described herein multiple times with CFH Management,

but CFH Management failed to remedy the issues.  Okemos was a member of LGF at all relevant times.

176.    LGF paid for and expended funds on various capital and maintenance improvements and other projects at the Las Cruces Greenhouse.

177.    LGF also transferred, provided funds, or otherwise paid for NMGH's expenses.

178.    In addition, NMGH obtained equity interest in LGF for the purported conversion of the LEDA grant, but NMGH effectively made no capital contribution to LGF for its equity, because NMGH was already required to provide a greenhouse in "Good Condition."

179.    NMGH received the benefit of the aforementioned capital improvements, projects, funds, and equity in LGF at the expense of LGF.

180.    The circumstances under which NMGH received the above-described benefits make it unjust for NMGH to retain the benefit without paying for them.

181.    Those benefits were received through improper conduct by NMGH and other defendants acting on NMGH's behalf.

182.    Okemos was a member of LGF at the time of the transactions complained of above.

## THIRTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Direct Claim Against NMGH, Wong, Pearce, Drake, and Jacobs)

183.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

184.    Okemos invested approximately $960,000 in LGF.

185.    LGF, in turn, paid for and expended funds on various capital and maintenance improvements and other projects at the Las Cruces Greenhouse, paid for NMGH's expenses, and otherwise transferred money to or for the benefit of NMGH, Wong, Pearce, Drake, and Jacobs or to their entities that ultimately benefitted them.

186.     NMGH, Wong, Pearce, Drake, and Jacobs received the benefit of the aforementioned capital improvements, projects, and funds at the expense of Okemos, as a substantial investor in LGF.

187.     The circumstances under which NMGH, Wong, Pearce, Drake, and Jacobs received the above-described benefits make it unjust for them to retain the benefit without paying for them.

**FOURTEENTH CLAIM FOR RELIEF**
**(Accounting)**
**(Direct Claim Against LGF and CFH Management)**

188.     Okemos incorporates the preceding paragraphs as if fully set forth herein.

189.     As a matter of proper business practice and according to the Operating Agreement, LGF and CFH Management were required to maintain adequate and accurate books and records that reflect the true nature and financial condition of LGF.

190.     LGF and CFH Management have control over the information required to comply with their obligations to maintain books and records that reflect the true nature and financial condition of LGF.

191.     Okemos has made numerous requests of LGF, CFH Management, and those individuals that control those entities, including the CFH Partners, for information reflecting the true nature and financial condition of LGF.

192.     Okemos' requests for information have not been granted, despite Okemos' right to that information under the Operating Agreement and Colorado law.

193.     Given the significant commingling of assets, mismanagement, and other allegations contained in this Complaint, Okemos is unable to determine the true nature and financial condition of LGF based on the information it possesses.

194.    It is therefore necessary and proper for this Court to order a proper accounting for the data and records in the possession, custody, and control of LGF and CFH Management to determine the true nature and financial condition of LGF, including its assets, liabilities, and any amounts owed to it by any of the Defendants or other third-parties.  It is further appropriate for the Court to order LGF and CFH Management to bear the costs of such an accounting.

**FIFTEENTH CLAIM FOR RELIEF**
**(Breach of Duties Pursuant to C.R.S. § 7-80-404)**
**(Derivative Claim Against CFH)**

195.    Okemos incorporates the preceding paragraphs as if fully set forth herein.

196.    Pursuant to C.R.S. § 7-80-713, Okemos has standing to bring a derivative action on behalf of LGF to enforce LGF's rights where, as here, LGF is not otherwise acting to enforce those rights. Okemos raised the issues described herein multiple times with CFH Management, but CFH Management failed to remedy the issues.  Okemos was a member of LGF at all relevant times.

197.    CFH Management had a duty to LGF to hold as trustee for LGF any property, profit, or benefit derived by CFH Management in the conduct of LGF's business.

198.    CFH Management also owed LGF a duty of care in the conduct of LGF's business.

199.    CFH Management was also required to discharge its duties to LGF and exercise any rights consistently with the contractual obligation of good faith and fair dealing.

200.    CFH Management breached its statutory duties, described above by, among other things, engaging in the conduct described in paragraphs 60-73, 74-100.

201.    CFH Management's conduct was grossly negligent, reckless, intentional, and/or knowing.

202.    LGF has suffered damages as a result of CFH Management's conduct.

38

203.   Okemos was a member of LGF at the time of the transactions complained of above.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff for all damages incurred by Plaintiff, including treble or other statutory damages, costs, expenses, attorneys' fees, pre-judgment and post-judgment interest as provided by Colorado and/or Federal law, and such further relief to which it may be entitled.

## JURY DEMAND

Okemos demands a jury trial in this matter.

DATED this 20th day of November, 2017.

By: _____

Zane A. Gilmer, #41602
STINSON LEONARD STREET LLP
6400 S. Fiddlers Green Circle, Suite 1900
Greenwood Village, CO 80111
Phone: (303) 376-8400
Fax: (303) 376-8439
Email:  zane.gilmer@stinson.com
Attorneys for Plaintiff

CORE/3503820.0002/135945898.1

## VERIFICATION

I certify the facts asserted herein to be truthful and accurate to the extent of my knowledge.


Okemos Home, LLC

By: _Roger C. Koenig_

Name: _Roger C. Koenig_

Title: _Managing Member_

Date: _November 20, 2017_